IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JASON WADE,<br>*Defendant*. | Criminal No. ELH-19-0344 |

**MEMORANDUM OPINION**

Defendant Jason Wade entered a plea of guilty on September 10, 2020 (ECF 32) to a Superseding Information (ECF 24), charging him with possession of a stolen firearm on May 29, 2019, in violation of 18 U.S.C. § 922(j). The plea was tendered pursuant to a Plea Agreement (ECF 28), entered under Fed. R. Crim. P. 11 (c)(1)(C), by which the parties agreed to a sentence in the range of 96 to 120 months of imprisonment. *Id.* ¶ 9. At sentencing on December 18, 2020, the Court sentenced the defendant to a term of imprisonment of 100 months of incarceration and three years of supervised release. ECF 47, ECF 48.[1]

Defendant is currently incarcerated at Allenwood USP. He has a projected release date of July 17, 2027. *See Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/ (search by BOP Register Number 42244-037) (last accessed September 23, 2026).

Wade corresponds frequently with the Court. *See*, *e.g.*, ECF 52, ECF 55, ECF 64, ECF 65, ECF 67, ECF 70, ECF 71, ECF 73, ECF 74, ECF 75, ECF 79, ECF 80, ECF 82, ECF 85.

This Memorandum Opinion addresses correspondence of defendant docketed at ECF 80, ECF 82, ECF 85. Construed generously, these submissions constitute

[1] It appears that the defendant would have qualified as an armed career criminal with respect to the original charges. *See* ECF 48; ECF 1 (Indictment).

a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (collectively, the "Motion").[2] The government's opposition is docketed at ECF 86. And, it relies on a prior response to an earlier motion, docketed at ECF 58.

No hearing is necessary. For the reasons that follow, I shall deny the Motion.

## I. Factual and Procedural Summary

As noted, on September 10, 2020, Wade entered a plea of guilty (ECF 32) to an Information (ECF 24) charging him with possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). The plea was tendered pursuant to a Plea Agreement. *See* ECF 28. In accordance with Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence ranging between 96 and 120 months of imprisonment. *Id.* ¶ 9.

By proceeding on the Information, the government agreed, in effect, not to pursue the charges in the Indictment (ECF 1), which carried significant penalties if defendant were convicted. In particular, defendant was indicted on charges of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Among other things, defendant faced a potential mandatory minimum term of 15 years of imprisonment for the felon in possession offense because, in light of his prior convictions, he may have qualified as an Armed Career Criminal under 18 U.S.C. § 922(e). Moreover, if defendant were convicted of the § 924(c)

[2] ECF 80 states, in part: "I am asking for time off for the First Step Act credits. When is the Fastes [sic] I can get to the Halfway House." The Clerk docketed ECF 80 as a motion under Section 404 of the First Step Act of 2018. ECF 82 and ECF 85 were docketed as correspondence. To this Court's knowledge, Section 404 made retroactive the Fair Sentencing Act of 2010, concerning drug quantities for sentencing. It has no relevance here. The Office of the Federal Public Defender declined to supplement ECF 80 under Section 404. *See* ECF 84.

offense, he would have faced a mandatory minimum term of imprisonment, consecutive to any other sentence.

At the time of sentencing on December 18, 2020, defendant was 35 years of age. ECF 36 (Presentence Report ), at 1. The Presentence Report ("PSR") reflects several convictions that did not score points under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"); *see* ECF 36, ¶¶ 28, 29, 30, 34, 35, 36, 37, 38. These included four felony drug distribution offenses. *Id.* ¶¶ 29, 34, 36, 37. In addition, for one of those drug offenses, defendant was prosecuted in federal court in Maryland. *Id.* ¶ 37. And, he was prosecuted again in the federal district court in Maryland for the offense of felon in possession. *Id.* ¶ 39.[3] So, the instant case is defendant's third federal conviction.

The Court sentenced the defendant to a period of incarceration of 100 months. *See* ECF 47 (Judgment); ECF 48 (Statement of Reasons). That sentence was well below the maximum set forth in the C Plea range.[4]

By Order of April 10, 2023 (ECF 66), the Court denied what it construed as a motion for compassionate release filed by defendant pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* ECF 52.

[3] Judge Benson Legg, who has since retired, previously sentenced the defendant to 87 months of incarceration in what is now GLR-06-058. *See id.*, ECF 10; *see also* ELH-19-0344, ECF 36, ¶ 39. In May 2013, defendant was committed to the Attorney General. *Id.* ¶¶ 39, 40, 41. He was conditionally released a few months later. *Id.*

[4] According to the PSR (ECF 36), the defendant's advisory sentencing guideline range only called for a period of incarceration of 30 to 37 months. *Id.* ¶ 90. This was based on a final offense level of 17 (*id.* ¶ 26), and a criminal history category of III. *Id.* ¶ 46. But, the Guidelines do not tell the whole story. In the Indictment, as indicated, defendant faced serious charges with equally substantial penalties. However, those penalties were not implicated because the government and the defendant agreed to proceed on the Information (ECF 24), in lieu of the Indictment, and because of the Plea Agreement (ECF 28).

The Court explained that it had no information to establish that Mr. Wade had ever petitioned the Warden for compassionate release. ECF 66. Therefore, the Court concluded that defendant failed to exhaust administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A). *Id.*

In a letter filed on June 7, 2023, Mr. Wade asked the Court if there is a way for him to "get some help to get out of jail faster[.]" ECF 67. He explained that he had Covid-19 twice and lost his grandfather and nephew. *Id.* At the Court's request (ECF 68), the government responded. ECF 69. Since then, Mr. Wade has written several letters to the Court, essentially asking again for the Court's assistance in obtaining his release from prison. *See* ECF 70, ECF 71, ECF 73, ECF 74, ECF 75.

For example, in a letter docketed March 21, 2024 (ECF 74), Mr. Wade wrote: "Hi Ms. Hollander I am writing you again to ask you is there anyway I can get out of Jail any faster[.] I heard a new law came out if you was on probation [at] the time you got lock[ed] up you can get out of Jail. I would like to know can you get back to me about what I am talking about please."

In ECF 80, defendant made a similar request. Then, in ECF 82 and ECF 85, defendant requested home detention so he can assist his grandmother, who "is getting old" and is in need of "help around the house." ECF 82; *see* ECF 85. In both letters, defendant asserts that his grandfather died several years ago.

## II. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Davis,* 175 F.4th 475, 480 (4th Cir. 2026); *United States v. Smith*, 2026 WL 509318, at *1 (4th Cir. Feb. 24, 2026) (per curiam); *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th

Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (per curiam) (unreported) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release. . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court, in its discretion, to reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction,"; "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and the court has considered the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *see also Fernandez v. United States,* 608 U.S. 411, 146 S. Ct. 1292, 1312 (2026); *United States v. Washington*, 161 F.4th 816, 818 (4th Cir. 2025); *United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025); *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a),

98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP). However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, the FSA authorizes a court to grant compassionate release "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *McCoy*, 981 F.3d at 275–76. If a defendant has already exhausted administrative remedies upon filing a first motion for compassionate release, the defendant does not need to meet the bar for

exhaustion a second time, should the defendant seek to renew the motion. *United States v. King*, 2025 WL 1692747, at *1 (4th Cir. June 17, 2025) (unreported).

In *Fernandez*, 146 S. Ct. at 1302, the Supreme Court underscored that "Congress made compassionate release available only when 'extraordinary and compelling reasons' justify it." And, said the Court, "That is a demanding standard." *Id.* It reasoned, *id.*: "While Congress has not defined the 'extraordinary and compelling reasons' that may warrant a reduced sentence, these criteria are not empty vessels. 'Extraordinary' means 'most unusual,' 'far from common,' and 'having little or no precedent.' 'Compelling' means 'tending to convince or convert by or as if by forcefulness of evidence.'" (citations omitted).

Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.[5]

The first step consists of two parts. The court "must determine: (1) whether extraordinary and compelling reasons warrant. . .a [sentence] reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173; *see United States of America, v. Alvis Damon Williams,* 2026 WL 752605, at *1 (4th Cir. Mar. 17, 2026) (per curiam)*; United States v. Boyd*, 2026 WL 595579, at *1 (4th Cir. Mar. 3, 2026) (per curiam); *Smith,* 2026 WL 509318, at *1; *United States v. Johnson*, 2026 WL 237729, at *1 (4th Cir. Jan. 29, 2026) (per curiam); *United States v. Pope*, 2026 WL 207491, at *1 (4th Cir. Jan. 27,

[5] The Fourth Circuit has said that there are two criteria, and that the first criterion consists of two steps. *See*, *e.g.*, *Davis*, 175 F.4th at 480; *Malone*, 57 F.4th at 173. But, in *Crawley*, 140 F.4th at 169, the Fourth Circuit stated that there are three criteria. Whether the criteria are counted as two or three, the substance is the same.

2026) (per curiam); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021). The court's analysis of these two parts goes hand in hand. *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025). If that first step is met, the court then proceeds to the second step.

Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Williams,* 2026 WL 752605, at *1; *Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see Smith,* 2026 WL 509318, at *2; *Washington*, 161 F.4th at 820; *United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023) (unreported); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

But, the Fourth Circuit has recognized that, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. If there is no applicable policy statement relating to the defendant's compassionate release motion, the court has discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." *Burleigh*, 145 F.4th 541, 548 (cleaned up); *see also United States v. Johnson*, 143 F.4th 212, 215 (4th Cir. 2025) (explaining that, "[i]n the absence of an applicable policy statement, district courts" have the power to "consider *any* extraordinary and compelling reason for release") (cleaned up).

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 981 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the *McCoy* Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf , . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A). The court should apply the Policy Statement that is applicable "at the time the court renders its decision[,]" not at the time the motion is filed. *Crawley*, 140 F.4th at 170.

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

> (a) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND

COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency. . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); and for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed. . . .", § 1B1.13(b)(6).

In deciding whether a defendant has met the ten-year requirement, district courts can only consider the time a defendant has served in prison and cannot adjust that amount with good-time credits. *Crawley*, 140 F.4th at 172–73. But, under § 1B1.13(b)(5), the district court may consider "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." The capacious language in § 1B1.13(b)(5) underscores that the enumerated circumstances listed in the Policy Statement are not an "exhaustive list" of extraordinary or compelling reasons. *Johnson*, 143 F.4th at 216. For example, in *Johnson*, the Court affirmed a district court's decision to reduce a defendant's sentence based on the disparity between the defendant's sentence and those of his co-conspirators. *Id.* at

215–16. But, in *Fernandez*, 146 S. Ct. at 1302, the Supreme Court made clear that "the supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release."

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[6]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a

[6] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[ ] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence. . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495.

reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes extraordinary and compelling reasons for relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *United States v. Washington* 161 F.4th 816, 821 (4th Cir. 2025); *Brown*, 78 F.4th at 128; *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).

Additionally, the court may consider the "'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Burleigh*, 145 F.4th 541, 548 (quoting 18 U.S.C. § 3553(a)(1), (3), (6)). The Fourth Circuit has observed that "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 F.3d at 500). And, district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see Washington*, 2025 WL 3559989 at *3; *United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). In weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190).

And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018). Moreover, the district court's "discretion is not boundless" and "in exceptional case[s]" the district court can abuse this discretion either by neglecting to "adequately explain how it weighed the § 3553(a) factors" or by "failing to recognize that the relevant § 3553(a) factors clearly favor release." *United States v. Smith*, 2025 WL 1864767, at *3, *4 (4th Cir. July 7, 2025) (unreported) (cleaned up) (finding that the district court abused its discretion by failing to acknowledge how the "multiplicity of factors combine to make the case for compassionate release").

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see Washington*, 161 F.4th at 821; *Malone*, 57 F.4th at 170; *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

In any event, as stated, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). It is "not difficult" for a district court to satisfy this standard. *Burleigh*, 145 F.4th 541, 550. However, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant

actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661. According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)).

The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)). Nevertheless, in *Burleigh,* 145 F.4th at 550, 551, the Court recognized that, even if

a defendant's sentence "would be shorter if issued today," this fact does not "increase the burden on district courts to explain their decision."

## III. Discussion

### A. Exhaustion and Home Detention

Under the First Step Act of 2018, a prisoner may seek a sentencing reduction directly from the court. However, the court may not modify a term of imprisonment pursuant to a request of the defendant unless the defendant has fully exhausted administrative remedies with the Bureau of Prisons ("BOP"). *See* 18 U.S.C. 3582(c)(1)(A).

Despite defendant's frequent correspondence with the Court, he has not provided any indication showing that he has exhausted his administrative remedies. Therefore, as the government asserts, ECF 86 at 3, this Court lacks authority to adjudicate defendant's request for compassionate release.

In addition, it is clear that defendant asks the Court to release him on home detention. But, only the BOP has the authority to release a prisoner to home confinement. *See* 18 U.S.C. § 3624(c)(2); *see also United States v. Texeira-Nieves*, 23 F.4th 48, 58-49 (1st Cir. 2022).

### B. Family Circumstances

Even assuming that defendant exhausted his administrative remedies, the government contends that the defendant has failed to establish an extraordinary and compelling reason for such release. *Id.* I agree.

In a letter dated July 15, 2021, and docketed July 21, 2025 (ECF 82), defendant asserts: "I am writing you about trying to come home on Home Detention[.] May you help me please. My Grandmother is get[t]ing old and she need[s] some help around the house. I am trying to be there

to help her out because I lost my Grandfather 3 years ago[.]" Defendant repeats that request in another letter of the same date. *See* ECF 85.

U.S.S.G. § 1B1.13(b) is titled "FAMILY CIRCUMSTANCES OF THE DEFENDANT." Section 1B1.13(b)(3)(C) provides for an extraordinary and compelling reason based on "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."

Section 1B1.13(b)(3)(D) provides for an extraordinary and compelling reason if the defendant "establishes that circumstances similar to those listed in paragraphs 3(A) through 3(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual." Of import, the phrase "immediate family member" includes a grandparent. *Id.*

Under this section, a court examines: (1) The relative's incapacitation; and (2) whether the defendant is the only available caregiver. *See*, *e.g.*, *United States v. Villar*, LAH-16-340, 2024 WL 2939018, at *3 (N.D. Ill. June 11, 2024).

**1. Incapacitation**

Notably, "incapacitation" is a high bar. The BOP has previously defined incapacitation narrowly, *i.e.*, when the family member (1) has "[s]uffered a serious injury, or a debilitating physical illness" such that the family member "is completely disabled, meaning that the [family member] cannot carry on any self-care and is totally confined to a bed or chair," or (2) has "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [family member's] mental capacity or function), but may not be confined to a bed or chair." Fed. Bureau of Prisons, Program Statement 5050.50 at 10 (2019)

https://www.bop.gov/policy/progstat/5050_050_EN.pdf (alterations added). Moreover, "[c]ourts have interpreted incapacitation in this context to mean that the individual is 'completely disabled' and 'cannot carry on any self-care' or 'is totally confined to a bed or chair.'" *United States v. Howard*, NJR-21-30187-1, 2025 WL 1684262, at *2 (S.D. Ill. June 16, 2025) (collecting cases); *see United States v. Gross*, HAB-17-37, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024); *United States v. Steele*, DRC-20-13-14, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024).

Therefore, an individual does not qualify as incapacitated when the medical conditions impact daily life but do not severely impede functionality. *See United States v. Swarn*, JRT-20-118, 2025 WL 2306990, at *2 (D. Minn. Aug. 11, 2025) (finding no incapacitation because medical records "contain no indication that [defendant's] mother is bedridden, chair-bound, or suffering from cognitive decline." ); *United States v. Stayton*, LCB-19-255-1, 2025 WL 1359805, at *3 (M.D.N.C. May 9, 2025) (finding that "the mere existence of a parent being elderly and who has general health issues does not demonstrate incapacitation."); *United States v. Dewalt*, CCE-20-78, 2025 WL 3213875, at *3 (M.D.N.C. Nov. 18, 2025) ("The case law is consistent that evidence of an elderly parent with health issues is not sufficient to show incapacitation."); *United States v. Vaughn*, MFU-10-17, 2025 WL 84215, at *6 (W.D. Va. Jan. 13, 2025) ("The court is sympathetic to Vaughn's desire to care for his mother, but the evidence submitted does not show that her medical conditions are so dire that she has become incapacitated."); *United States v. Bass*, RLW-19-35, 2024 WL 3552030, at *3 (E.D. Mo. July 26, 2024) (finding defendant failed to present evidence that his father was incapacitated); *United States v. Armstrong*, TDC-16-0601, 2024 WL 1096621, at *2 (D. Md. Mar. 13, 2024) (no showing of incapacitation based only on the allegation that a parent suffered from heart disease and required regular assistance). Furthermore, "general claims" from a defendant's mother "that it would be helpful for her son to take care of her

and cook and clean for her do not suffice to demonstrate incapacity." *Gross*, 2024 WL 4100325, at *3; *see United States v. Wendel*, JJH-19-219, 2024 WL 2748493, at *2 (N.D. Ohio May 29, 2024) ("Ms. Wendel's general assertion she is unable to 'manage her home' is not sufficient to demonstrate that she is incapacitated.").

The case of *United States v. Stamper*, FDW-20-00295, 2024 WL 3512807 (W.D.N.C. July 23, 2024), is instructive. There, the court wrote, *id.* at *5 (alterations added): "Defendant states his mother lives alone and has hearing loss, vision loss, st[e]nts in her heart, and is suffering from the beginning stages of Alzheimer's. She also has [a] history of falls." A letter from the defendant's mother corroborated her health issues and requested the defendant's assistance. However, the court ruled that the defendant had not established his mother's incapacity, stating *id.*: "While the Court does not deny his mother's health concerns as legitimate, and empathizes with her difficulties, Defendant does not provide additional verifiable medical documentation establishing his mother is incapacitated and in need of a full-time caregiver." Furthermore, the court noted that although the "mother's conditions may worsen and eventually need full-time care, she currently is not incapable of caring for herself." *Id*.

Wade has not provided any information to the Court about his grandmother to establish her incapacitation. Moreover, "[t]he case law is consistent that evidence of an elderly parent with health issues is not sufficient to show incapacitation." *United States v. Dewalt*, CCE-20-78, 2025 WL 3213875, at *3 (M.D.N.C. Nov. 18, 2025) (finding no incapacitation despite evidence that father "has some serious health issues and could use assistance"); *see United States v. Armstrong*, TDC-16-0601, 2024 WL 1096621, at *2 (D. Md. Mar. 13, 2024) (finding no incapacitation when only allegation was that mother had heart disease and needed regular care); *United States v. Bartlett*, HAB-14-14, 2025 WL 1272136, at *3 (N.D. Ind. May 1, 2025) (finding no incapacitation

despite documented medical conditions because "nothing in [defendant's] motion suggests, much less demonstrates, that [his mother] cannot . . . provide self-care.") (alterations added).

**2. Sole Caregiver**

Notably, the inquiry under U.S.S.G. § 1B1.13(b)(3)(D) is not whether the defendant is the optimal caregiver. Rather, it is whether defendant is the *only available* one.

In order for the Court to conclude that an extraordinary and compelling reason has been established, defendant must show that he "is the only available caregiver for a family member in dire conditions . . . ." *United States v. Polanco-Gonzalez*, VM-17-0688, 2026 WL 177831, at *3 (S.D.N.Y. Jan. 21, 2026); *see United States v. Young*, MMG-24-00273, 2025 WL 3496277, at *3 (S.D.N.Y. Dec. 5, 2025); *United States v. Ruiz-Patozano*, JGK-20-686, 2025 WL 3136595, at *2 (S.D.N.Y. Nov. 10, 2025); *United States v. Doe*, JAW-17-00091-1, 2024 WL 4751731, at *12 (D. Me. Nov. 12, 2024); *Gross*, 2024 WL 4100325, at *3; *see also United States v. Figueroa-Gibson*, RAM-16-802, 2024 WL 376432, at *6 (D.P.R. Jan. 31, 2024) (finding that although defendant claimed geographic distance and mental infirmity of family members, without "more evidence as to these challenges, the Court cannot find that these other family members are unable to provide adequate care."); *United States v. Striganivicz*, Y-95-271, 2023 WL 4868100, at *1 (E.D. Pa. July 31, 2023) (explaining that courts have "denied motions for compassionate release premised on sick or elderly parents in the absence of strong evidence the petitioner is the *sole* individual capable of caring for the parent.") (cleaned up) (emphasis in original).

Defendant has not made the "robust evidentiary showing that [he] is the only available caregiver," as the law requires. *United States v. Richardson*, IFL-18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020). The Court does not doubt the sincerity of defendant's desire to care

for his elderly grandmother. But, the Guidelines require that defendant be his grandparent's only available caregiver. U.S.S.G. § 1B1.13(b)(3)(C). Defendant has not carried his burden.

**C. 18 U.S.C. § 3553(a)**

Even assuming, *arguendo*, that defendant established an extraordinary and compelling reason for compassionate release, that finding would not end the inquiry. The Court must then consider the sentencing factors in 18 U.S.C. § 3553(a). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

I agree with the government that a balancing of the § 3553(a) factors does not favor a reduction in defendant's sentence at this time.

First, the nature and circumstances of the underlying offense are very serious. Defendant possessed two loaded firearms in connection with a drug trafficking offense. Moreover, this was the defendant's third federal conviction. Third, the government has submitted evidence of at least two disciplinary infractions committed by the defendant since 2024. *See* ECF 86-2. This presents a concern as to defendant's ability to comply with the rules.

**IV. Conclusion**

For the foregoing reasons, I shall deny the defendant's motion for compassionate release (ECF 80, ECF 82, ECF 85), without prejudice. An Order follows, consistent with this Memorandum Opinion.

Date: September 24, 2026

/s/
Ellen L. Hollander
United States District Judge